IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVE PANALIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. CIV-02-635-C |
| | ) |
| LARRY PRESTON MOORE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Judgment on the Pleadings[1] (Dkt. No. 29). Defendant, Larry Preston Moore, asserts that Plaintiff, Steve Panalis, has failed to state any claim upon which relief may be granted.[2] Specifically, Moore asserts that the state law applicable to this case does not recognize a "false light invasion of privacy" claim. Moore further claims that Panalis has not asserted that Moore's conduct was extreme and outrageous, a necessary element of an intentional infliction of emotional distress claim. Finally, Moore claims that Panalis has not stated a claim for libel because the statements are not defamatory and are entitled to constitutional protection. The Court agrees that judgment is proper on Panalis's claims and grants the motion.

---

[1] Although styled as a Motion to Dismiss, the motion is made pursuant to Fed. R. Civ. P.12(c), which is a motion for judgment on the pleadings.

[2] Moore is entitled to raise his 12(b)(6) defense in a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(h)(2).

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'" Ramirez v. Dep't of Corrections, 222 F.3d 1238, 1240-41 (10th Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In evaluating a motion for judgment on the pleadings, the Court applies the same standards applicable to a 12(b)(6) motion, accepting all well-pleaded facts as true and construing all reasonable inferences therefrom in favor the plaintiff. Id. The Court must confine its review to matters contained in or attached to the pleadings. Fed. R. Civ. P. 12(c). If it reviews matters outside the pleadings, it must convert the motion to one for summary judgment. Id. Although the Court may take judicial notice of the *existence* of other court opinions, it may not take judicial notice of the facts contained therein without converting the motion to one for summary judgment. See Gilchrist v. Citty, 71 Fed. Appx. 1 *3 (10th Cir. 2003) (discussing the propriety of judicial notice of facts contained in other opinions when analyzing a motion to dismiss under 12(b)(6)); see also Friedman v. United States, 927 F.2d 259, 261 (6th Cir. 1991) (holding that taking judicial notice of facts obtained from an unpublished opinion of the Court of Appeals in a related action mandated conversion of the motion from one to dismiss to one for summary judgment).

BACKGROUND

This case is the latest in a series of protracted litigation between these parties. It stems from the explosion of an oil storage tank in Colorado. Panalis, working for Moore's company, J.P. Moore, Inc.,[3] together with Panalis's friend, Jack Rhine, was responsible for moving the tank. Sometime after Panalis and Rhine began draining the excess oil from the tank, the tank exploded. The explosion killed Rhine and seriously injured Panalis.

Panalis and his wife filed suit against Moore in Colorado state court, alleging fraud based on a statement by Moore about his insurance coverage. The case went to trial and the jury returned a verdict in favor of Panalis, awarding Panalis $6,584,000, and his wife $150,000.

Moore appealed the verdict to the Colorado Court of Appeals. In addition, Moore filed for bankruptcy in the Western District of Oklahoma. The Colorado court stayed its proceedings pending the bankruptcy litigation.

Panalis and his wife filed an adversary proceeding in the bankruptcy court to determine the dischargeability of the Colorado state judgment. The bankruptcy court found the debt to be dischargeable, a decision later affirmed by the Tenth Circuit Court of Appeals. See In re Moore, 357 F.3d 1125, 1129-30 (10th Cir. 2004).

---

[3] The parties dispute whether Panalis was an employee or independent contractor for Moore's company. Panalis alleges in his Complaint that he was an employee. (Pl.'s Compl., Dkt. No. 1, ¶ 12.) However, the Tenth Circuit, in In re Moore, indicated that Panalis was an independent contractor. See In re Moore, 357 F.3d 1125, 1126 (10th Cir. 2004). Although the Tenth Circuit's conclusion might be relevant to a motion for summary judgment, the Court cannot take judicial notice of the facts found by the circuit court in deciding a 12(c) motion.

During the pendency of the bankruptcy appeal, Moore sent an e-mail to a former business associate, Mr. Noonan. In the e-mail, Moore attempted to ascertain whether Panalis really thought Moore lied to him. Upon receiving a response, Moore replied with an e-mail that is the subject of this defamation action. The e-mail reads in pertinent part:

> Of course Steve doesn't think I lied to him. What Steve thought was that I let him down – that I abandoned him in his time of need. So he became very angry at me – and you helped fan that fire as your true nature would compel you to do. Was he ever an employee of L.P. Moore, Inc.? Not if full knowledge and agreement between two men mean anything. So once he started lying about that, it was easy for him to say that I promised him insurance – that I "misled" him into working for me. That is a damned lie – he knows it and I know it. Hell, if he really believed it, then why did he refuse my repeated efforts to talk to him? Why did he change his number and tell people (like John Marottek) not to give me his number? I'll tell you why; it's because he was ashamed to say the lie to me. There's no doubt in my mind that you have a lot to do with this. You can always tell people like you and Patty because you leave chaos and destruction in your wake. Well congratulation, you've done it again. [P]oor old Steve not only has to live with getting Jack killed and crippling himself but now he has to live with being a liar too. And what's he got to show for that evil? . . . What you and Steve tried to do to me was like an act of terrorism. Just like bin Laden, you were so angry that you went through all this effort trying to ruin me. The terrorists [sic] efforts are pathetic and futile and so are yours. Sure you kicked me when I was down, but I got up, got an MBA degree and I just got my dream job paying more money than I've ever made in my life in Canberra, Australia. You want to know why I'm a winner and you're a loser? Because I don't hate myself and the whole world.

(February 22, 2002, e-mail, Pl.'s Compl., Dkt. No. 1, Exh. C.) Shortly after Moore sent the e-mail, Panalis filed this action claiming defamation (libel per se and libel per quod), false light invasion of privacy, and intentional infliction of emotional distress. After a lengthy stay pending the Tenth Circuit's resolution of the bankruptcy litigation, Moore filed this 12(c) motion.

D<small>ISCUSSION</small>

False Light

Moore first challenges Panalis's false light claim, asserting that this cause of action has been expressly rejected by the Colorado Supreme Court.[4] See Denver Publ'g Co. v. Bueno, 54 P.3d 893 (Colo. 2002). Although Panalis points out that this decision was decided subsequent to his filing this action, he concedes that the decision bars his false light claim. (Pl.'s Response, Dkt. No. 32, at 5-6.) Accordingly, Moore is entitled to judgment on this claim and the Court turns to the two remaining claims.

Intentional Infliction of Emotional Distress

Under Colorado law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege the following: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress." English v. Griffith, 99 P.3d 90, 93 (Colo. Ct. App. 2004). The question of whether conduct is sufficiently outrageous is generally an issue of fact; however, the Court must make an initial determination about whether reasonable persons could disagree on the question. Coors Brewing Co. v. Floyd, 978 P.2d 663, 665-66 (Colo. 1999).

---

[4] Both parties have assumed that Colorado law is the choice of law to apply to this case; therefore, the Court looks to whether Panalis has pleaded facts that would enable him to relief under Colorado substantive law.

Moore claims that Panalis has not alleged facts that would permit reasonable persons to find that his conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 666 (citations omitted). The Court agrees.

Panalis has claimed that Moore's e-mail was "outrageous, vile, reprehensible, dishonorable, and extreme" (Pl.'s Response, Dkt. No. 32, at 12), especially when viewed in light of the injuries Panalis had already suffered in the explosion and ensuing litigation. Notably, Panalis cites no case law to support this assertion.

The Colorado Supreme Court refers to the "extreme and outrageous" standard as "extremely high." Id.; Pearson v. Kancilia, 70 P.3d 594, 597 (Colo. Ct. App. 2003). Mere insults and threats are insufficient to meet this standard. Pearson, 70 P.3d at 597. Indeed, the Colorado courts have dismissed claims where the plaintiff alleges that the defendant "engaged in a pattern of physical and psychological intimidation," McCarty v. Kaiser-Hill Co., L.L.C., 15 P.3d 1122, 1126-27 (Colo. Ct. App. 2000), and where the defendant allegedly fired the plaintiff to cover for his own illegal misconduct, Coors Brewing Co., 978 P.2d at 666. In the defamation context, the Colorado Court of Appeals affirmed the dismissal of an intentional infliction of emotional distress claim where the defendant had allegedly accused the plaintiff, over the radio, of stabbing a police officer and having a history of domestic violence and extramarital affairs. Gordon v. Boyles, 99 P.3d 75, 80 (Colo. Ct. App. 2004).

Even taking into account Panalis's permanent physical injuries (which were allegedly known by Moore at the time he sent the e-mail), the Court concludes that reasonable persons

6

could not find Moore's statements to be "utterly intolerable." See English, 99 P.3d at 93. Accordingly, Moore is entitled to judgment on this claim.

Libel

*Defamation Per Se or Defamation Per Quod*

The first step in analyzing a claim for defamation is to determine whether the statement(s) are defamatory. A statement is defamatory "'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Burns v. McGraw-Hill Broad. Co., 659 P.2d 1351, 1357 (Colo. 1983) (quoting Restatement (Second) of Torts § 559 (1976)). Whether a statement is defamatory is a question of law. Gordon, 99 P.3d at 79.

The publication of libel "can be either defamatory per se or defamatory per quod, depending upon the certainty of the defamatory meaning of the publication." Id. To be defamation per se, the defamatory meaning must be apparent on the face of the statement or fall into "one of the traditional slander per se categories." Id. If extrinsic facts known to the recipient are necessary to understand the defamatory meaning, the statement is defamatory per quod. Id. If a statement is defamatory per quod, the plaintiff must allege special damages to sustain the claim. Id.

Panalis claims that the e-mail is defamatory on its face. Specifically, Panalis claims that Moore accuses him of lying or being a liar, of getting Jack Rhine killed, and of acting like a terrorist. The Court agrees that each of these allegations, without any additional information known by the recipient, *could* "lower [Panalis] in the estimation of the

community." Burns, 659 P.2d at 1357. Therefore, because the statement is defamatory per se, Panalis does not need to allege special damages.

*Constitutional Protection*

Having concluded that the statements are defamatory, the Court must then determine whether the statements are constitutionally protected. To determine this, the Court undertakes a two-part inquiry.[5] See Keohane v. Stewart, 882 P.2d 1293, 1299 (Colo. 1994). First, the Court determines whether each statement is "'sufficiently factual to be susceptible of being proved true or false.'" Id. (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990)). Second, the Court must determine "whether reasonable people would conclude that the assertion is one of fact." Id. If a plaintiff is unable to satisfy both parts of this test, the statements will be entitled to full constitutional protection.

Whether the statements are objectively verifiable is a close call. Clearly, the statement that what Panalis did to Moore was "like an act of terrorism" cannot be objectively verified.[6] The remaining two statements, that Panalis is a liar and had a role in the death of his friend, are potentially capable of being proved true or false. However, the Court need not decide this

---

[5] It is unclear whether this test would apply to purely private speech. However, because both parties have asserted that the speech was on a matter of public concern, the Court need not resolve this question.

[6] Even if an "act of terrorism" could be clearly defined and Panalis's actions measured against it, this statement would still be constitutionally protected because no reasonable reader would take the statement as actual assertion of fact. See Keohane, 882 P.2d at 1301 (holding that letters to the editor impugning the credibility of a local judge were constitutionally protected because in light of the circumstances and context in which the letters had appeared no reasonable person could interpret the letters as stating actual facts about the judge).

prong because, even if verifiable, neither statement could reasonably be interpreted as stating actual facts about Panalis.

In determining the second prong, the Court is guided by three factors: "(1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed." Keohane, 882 P.2d at 1299.

Weighing these factors, the Court concludes that the statements are constitutionally protected. First, the letter is clearly written in anger directed at the recipient and is "replete with the sort of 'imaginative expression' and 'rhetorical hyperbole' the Supreme Court has regarded as particularly worthy of constitutional protection. Keohane, 882 P.2d at 1300. The email calls Noonan "evil," a "loser," "manipulating[] user[] who bring[s] poison into whomever lives" he touches, "leav[ing] chaos and destruction in [his] wake." Clearly, the overall tone of the email suggests it should not be taken literally. Cf. Keohane, 882 P.2d at 1301-02 (use of "gross overgeneralization" and "imaginative expression" such as "sickie," "terrorists," "sleaze," and "scum" were a signal that the words should not be taken as "reasoned accusations"). Additionally, the context in which the letter was apparently sent is also important. Moore is clearly blaming Noonan for many of the troubles between Moore and Panalis. For instance, Moore says, "[w]hat Steve thought was that I . . . abandoned him in his time of true need. So he became very angry at me – and you helped fan that fire as your true nature would compel you to do." "There's no doubt in my mind that you have a

9

lot to do with [Panalis's refusal to speak with Moore personally]" Indeed, the statement about "poor old Steve…having to live with getting Jack killed and crippling himself" immediately follows Moore's sarcastic "congratulations" to the recipient for causing "chaos and destruction" with his "evil." In this context, a reasonable person would conclude that Moore was angry and frustrated with Noonan for what Moore perceives as Noonan's role in exacerbating a difficult situation. Cf. Keohane, 882 P.2d at 1301 (context of letter would be understood as author's "expression of anger and frustration with the medical and legal community . . . and her own conjectural explanation for the cause of that anger and frustration."). Accordingly, after applying the Keohane factors, the Court concludes that no reasonable person would understand Moore's email to be actual assertions of fact and thus, the email is constitutionally protected.

## CONCLUSION

Because the Court has determined that the statements are constitutionally protected, it need not address who carries the burden to demonstrate the statement's truth or falsity. Therefore, consistent with the Court's analysis above, Moore's Motion for Judgment on the Pleadings (Dkt. No. 29) is GRANTED. A separate judgment will be entered accordingly.

IT IS SO ORDERED this 23rd day of May, 2005.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge